GLADYS HUNTER WILSON v. A. K. ANDERSON and ZOE ANDERSON STRAWN, Individually and as Administrators of the Estate of HARRY P. HUNTER; HENRY LEE ANDERSON, WILLIAM T. ANDERSON, JR., RUTH S. A. GREENWALD, and JANE BROOKE ANDERSON.

(Filed 9 June, 1950.)

**1. Adoption § 4—**

Adoption is solely statutory and is a judicial declaration of the status of a child in relation to the adopting parent in the exercise of a prerogative exclusive to the State.

**2. Adoption § 10—**

A decree of adoption has the same force and effect as that of any other judgment.

**3. Adoption § 4—**

Statutes relating to adoption should be construed *in pari materia* as constituting one law.

**4. Descent and Distribution § 6—**

Ordinarily an adopted child cannot inherit from relatives of the parent by adoption in the absence of express statutory provision.

**5. Adoption § 4—**

The successive amendments to and rewritings of the adoption statutes reveal plainly a legislative intent that each shall have prospective effect.

**6. Statutes § 10—**

Statutes are presumed to operate prospectively only.

**7. Descent and Distribution § 1—**

While the General Assembly has power to make or change statutes of descent and distribution, and ordinarily the law in effect at the time the person dies intestate governs the descent and distribution of his property, such statutes are subject to general rules of statutory construction and, when necessary, should be construed in connection with other statutes relating to the same subject matter.

**8. Adoption § 10: Judgments § 29—**

A decree of adoption which prescribes and limits the right of the adopted child to inherit property has the force and effect of a judgment of a court of competent jurisdiction, and comes within the general rule that parties and their privies are ordinarily bound by a judgment.

**9. Statutes § 10—**

A statute will not be given retroactive effect when such construction would interfere with vested rights or with judgments already entered.

**10. Descent and Distribution § 6—**

G.S. 21-1 (14) and G.S. 128-149 (10) have prospective effect only, and therefore a child adopted in 1919 under the law prescribing that such child

should be entitled to inherit only from the adopting parent, is not entitled to inherit either realty or personalty from the brother of her deceased father by adoption, even though the brother dies subsequent to the effective date of the 1947 amendments to the statutes of descent and distribution.

APPEAL by plaintiff and by defendants from *Bobbitt, Resident Judge,* 18 March, 1950.

Civil action to have plaintiff, an adopted child of a deceased brother, declared an heir and distributee of Harry P. Hunter, deceased, and as such to be seized and possessed of one-half interest in the real estate of which he died seized, and to be entitled to one-fifth distributive share of the personal property of which he was possessed at his death, heard upon motion of plaintiff for judgment on the pleading in accordance with the purpose of the action thus stated.

These are the facts alleged in complaint of plaintiff and admitted in answer of defendants as shown in the record on this appeal:

I.   Harry P. Hunter, a resident of Mecklenburg County, North Carolina, died intestate on 3 October, 1949, seized and possessed of certain specifically described real estate and certain personal property, in said county, and his nephew, A. K. Anderson, and his niece, Zoe Anderson Strawn, defendants herein, were appointed, and are now acting as administrators of his estate.

II.   Harry P. Hunter, never married, and was survived by: (1) The plaintiff, Gladys Hunter Wilson, the lawfully adopted child for life of Malcolm B. Hunter and his wife E. H. Hunter, brother and sister-in-law of Harry P. Hunter, who predeceased him, and who had no children born to them,—the order of adoption bearing date of 25 April, 1919; and (2) the defendants A. K. Anderson, Zoe Anderson Strawn and Harry Lee Anderson, children of Zoe Hunter Anderson and her husband, who were sister and brother-in-law of Harry P. Hunter, and who predeceased him, and defendants William T. Anderson, Jr., Ruth D. Greenwald, and Jane Brooke Anderson, children of William T. Anderson, who was son of the said Zoe Hunter Anderson, sister of Harry P. Hunter, and who also predeceased him.

The cause came on for hearing before the resident judge of the district, upon the above admitted facts, and the court was of opinion and held:

"That the statutes of Descent and Distribution, as amended by 1947 Session Laws, Chapter 832 and Chapter 879 (G.S. 29-1 (14) and G.S. 28-149 (10)) were in full force and effect at the death of Harry P. Hunter and control the descent of real estate and the distribution of personal property in this cause; that in respect of real property the plaintiff, Gladys Hunter Wilson, is entitled to an undivided one-half interest therein, taking *per stirpes* through her adoptive father, Malcolm B. Hunter, the share he would have inherited had he survived the deceased;

that in respect of personal property the plaintiff, Gladys Hunter Wilson, if entitled to take at all would take *per capita,* not by, through or from her adoptive father on the principle of representation, but on account of her own relationship to the deceased, if any, and that since the plaintiff has no relation of kinship to the deceased she does not participate in the distribution of the personal property of his estate." And thereupon the court adjudged:

"1. That the respective interests of the parties in the real estate of Harry P. Hunter, deceased, are as follows:

"(a) Gladys Hunter Wilson, as adopted child of Malcolm B. Hunter, a one-half undivided interest.

"(b) A. K. Anderson, Zoe A. Strawn, and Henry Lee Anderson, as nephews and niece of Harry P. Hunter and in the same degree of relationship, each a one-eighth undivided interest.

"(c) William T. Anderson, Jr., Ruth S. A. Greenwald and Jane Brooke Anderson, as children of William T. Anderson, a deceased nephew of Harry P. Hunter, each a one-twenty-fourth undivided interest.

"2. That the plaintiff has no interest as a next of kin or distributee in the personal property of the estate of Harry P. Hunter.

"3. That the respective interests of the defendants in the personal property of the estate of Harry P. Hunter, deceased, are as follows:

"(a) A. K. Anderson, Zoe A. Strawn and Henry Lee Anderson, as nephews and niece of Harry P. Hunter and in the same degree of relationship, each a one-fourth interest.

"(b) William T. Anderson, Jr., Ruth S. A. Greenwald and Jane Brooke Anderson, as children of William T. Anderson, a deceased nephew of Harry P. Hunter, each a one-twelfth interest."

Plaintiff objects, and excepts to (1) denial of her motion for judgment on the pleadings in the form presented in her motion; (2) so much of the conclusions of law as hold that plaintiff, for reason stated, does not participate in the disposition of the personal property of the estate of Harry P. Hunter; (3) so much of the judgment as adjudges that plaintiff has no interest as a next of kin or distributee in the personal property of said estate; (4) to so much of the judgment that adjudges the interests of the individual defendants in the personal property of said estate; and (5) to the signing and entering of the judgment containing the aforesaid conclusions of law and paragraphs 2 and 3 as set out therein, and appeals to the Supreme Court and assigns error.

And defendants object and except (1) to refusal of the court to sign judgment tendered by them; (2) to the conclusion of law contained in the judgment signed: "That the statutes of Descent and Distribution as amended by 1947 Session Laws, Chapter 832 and Chapter 879 (G.S. 29-1 (14) and G.S. 28-149 (10)) were in full force and effect at the death of

Harry P. Hunter and control the descent of real property and the distribution of personal property in this cause"; (3) to so much of the conclusions of law that holds "That in respect of real property the plaintiff, Gladys Hunter Wilson, is entitled to an undivided one-half interest therein, taking *per stirpes* through her adoptive father, Malcolm B. Hunter, the share he would have inherited had he survived the deceased"; (4) to the inclusion in the judgment of numbered paragraph 1 thereof as hereinabove set forth; and (5) to the signing and entering of the judgment containing the conclusions of law set out above, etc., and appeal to the Supreme Court and assign error.

*John H. Small for plaintiff.*
*Francis H. Fairley for defendants.*

WINBORNE, J.   Decision on the appeals of plaintiff and of defendant turns upon the answer to this question: Do the statutes of descent and distribution, as amended by 1947 Session Laws, Chapter 832 (G.S. 29-1 (14)) and Chapter 879 (G.S. 28-149 (10)), apply to an adoption made in the year 1919 under the statute pertaining to adoptions, Chapter 2 of Revisal of 1905, as it then existed? In the light of pertinent statutes, and of decisions of this Court, and of rules for interpreting legislative acts, we are of opinion and hold that this question merits a negative answer.

In this connection, it is appropriate to make these general observations as to the law relating to adoptions. The purpose of an adoption is to change the status of a child in relation to its adoptive parent. The State alone can determine when the relation of parent and child ceases, and in what respects it shall do so. Adoption is a status unknown to common law, and can be accomplished only in accordance with provisions of statutes enacted by the legislative branch of the State government. Under statutes providing for adoption through judicial proceedings instituted by filing a petition to a court of competent jurisdiction alleging certain requisite facts from which the court decrees the status and the right of the child, the court is said to act judicially in rendering the judgment. And the decree of adoption obtained by judicial proceedings is regarded as a judgment of the court, and is given the force and effect of any other judgment. 2 C.J.S. 367, *et seq.* Adoption of Children, Sections 1, 6, 40.   See also *Truelove v. Parker,* 191 N.C. 430, 132 S.E. 295.

Moreover, in reference to other laws, it is said that "All adoption laws and statutes *in pari materia* therewith in force in a State should be read together, as constituting one law." 2 C.J.S. 377, Adoption of Children, Section 6 (b).   And here it is appropriate to note that in the year 1919,

at the time plaintiff was adopted, the statutes of descent and distribution in this State contained no rules regarding the rights of adopted children in those respects. In this connection, an adopted child cannot usually inherit from relatives of the adoptive parent unless there is an express statute to that effect. 2 C.J.S. 452, Adoption of Children, Section 63 (b). And the decisions of this Court are to the effect that the law in force at the time of the adoption governs the right of the child to inherit; so that under the law as it existed in 1919 a child adopted for the life of the child, acquired by adoption the right to inherit the real estate of the adoptive parent, and to take his personal property, in the event he die intestate, but acquired no right to inherit or to take through him such property of his collateral relative who might die intestate. *Grimes v. Grimes,* 207 N.C. 778, 178 S.E. 573; *Phillips v. Phillips,* 227 N.C. 438, 42 S.E. 2d 604.

But the General Assembly of 1947 inserted in the statutes of descent and distribution rules in that respect relating to adopted children, as follows:

Chapter 832 of 1947 Session Laws of North Carolina, amending the General Statutes relating to descents, as it pertains to adopted children, provides in Section 1 that Section 29-1 of the General Statutes be amended by adding a new rule to read as follows:

"Rule 14: An adopted child shall be entitled by succession or inheritance to any real property by, through, or from its adoptive parents the same as if it were the natural, legitimate child of the adoptive parents."

The act provided that "all laws and clauses of laws in conflict herewith are hereby repealed" and that this "act shall become effective July 1st, 1947."

And Chapter 879 of 1947 Session Laws of North Carolina amending the General Statutes relating to distribution as it pertains to adopted children, provides in Section 1 that General Statutes be amended by adding to G.S. 28-149 a new section to read as follows: "10. An adopted child shall be entitled by succession, inheritance, or distribution of personal property, including, without limiting the generality of the foregoing, and recovery of damages for the wrongful death of such adopted parent by, through, and from its adoptive parents the same as if it were the natural, legitimate child of the adoptive parents." And the act provides that "All laws and clauses of laws in conflict with this act are hereby repealed," and that "this act shall become effective July 1st, 1947."

Hence, the question arises as to the effect, if any, of these amendments to the statutes of descent and distribution upon the rights of a child adopted under the adoption law as it existed in the year 1919 at the time plaintiff was adopted.

It is appropriate, therefore, to review the statutes of this State, enacted from time to time, providing for the adoption of minor children by judicial proceeding, and declaring the effect of orders of adoption entered in such proceedings.

The statute, Chapter 2 of the Revisal of 1905, pertaining to "Adoption of minor children," in effect on 25 April, 1919, the date on which plaintiff was adopted by Malcolm B. Hunter, gave to the jurisdictional court power to sanction and allow an adoption by an order granting letters of adoption. Rev. 176. And in Section 177 the statute declared that "such order, when made, shall have the effect forthwith to establish the relation of parent and child between the petitioner and the child during the minority or for the life of such child, according to the prayer of the petition, with all the duties, powers and rights belonging to the relationship of parent and child, and in case the adoption be for life of the child, and the petitioner die intestate, such order shall have the further effect to enable such child to inherit the real estate and entitle it to the personal estate of the petitioner in the same manner and to the same extent such child would have been entitled to if such child had been the actual child of the person adopting it : Provided, such child shall not so inherit and be so entitled to the personal estate, if the petitioner specifically set forth in his petition such to be his desire and intention."

This declaration is in practically the same language used by the General Assembly in the original act providing for adoption of minor children, Laws 1872-3, Chapter 155, Section 3, and as brought forward in the Code of 1883, Section 3.

Thus it appears that the General Assembly declared there that the order of adoption provided for as above stated, shall have two effects : (1) The establishment of the parent and child relationship between the petitioner and the adopted child, with all the duties, powers and rights belonging to such relationship. (2) The grant to the child a limited right of inheritance, that is, the right to inherit the real estate, and to take or share the personal property of the petitioner only.

It is also noted that the provisions of Rev. 177 were brought forward in almost identical language and incorporated in the Consolidated Statutes of 1919 as Section 185, a part of Chapter 2 relative to proceedings for adoption of minors. C.S. 185. The Consolidated Statutes of 1919 became effective 1 August, 1919. See C.S. 8107.

Moreover, in 1933 the entire statute, as it appeared in the Consolidated Statutes of 1919, Sections 182 to 191, both inclusive, was repealed and rewritten by the General Assembly. See Chapter 207, P.L. 1933. As so rewritten subsection 5 of Section 1 deals with the effect of the order of adoption, and it is in almost the same wording as C.S. 185. And in Section 10 of the act it is provided that "All proceedings for the adoption

of minors in courts of this State are hereby validated and confirmed, and the orders and judgments therein are declared to be binding upon all parties to said proceedings and their privies and all other persons, until the orders or judgments shall be vacated as provided by law."

And in 1935 the entire statute, as so rewritten in the 1933 Act, P.L. 1933, Chapter 207, was repealed and rewritten by the General Assembly. See Chapter 243, P.L. 1935. And as so rewritten the provisions of the 1933 Act, P.L. 1933, Chapter 107, in material aspect, particularly subsection 5 of Section 1 and Section 10 as above set forth, were reincorporated in almost identical language.

And it is noted that the adoption statute, as rewritten in 1935, Chapter 243 of P.L. 1935, was amended by the General Assembly of 1941. See Chapter 281, P.L. 1941. As so amended, in Section 4 of the amended act, subsection 5 of Section 1 of the 1935 Act was rewritten in substantially the same language, except as to the effect of the order of adoption in respect to inheritance, etc. But in Section 8 of this 1941 Act, it is provided that the provisions of Section 4 of the Act shall apply only to adoptions hereafter made. See *Phillips v. Phillips, supra.*

And, in passing, it may be noted that the statute on adoption of minors became a part of General Statutes on its effective date, 31 December, 1943. And it may also be noted that Chapter 885 of the 1947 Session Laws of North Carolina, purporting to rewrite Chapter 48 of the General Statutes relating to "Adoption of minors" was declared inoperative and void. See advisory opinion—Appendix, 227 N.C. 708, 43 S.E. 2d 73.

But the General Assembly of 1949 did rewrite said Chapter 48 of the General Statutes, expressly to incorporate the provisions of said Chapter 885 of 1947 Session Laws, to read as sections of the General Statutes. See Chapter 300 of 1949 Session Laws of North Carolina.

And so rewritten the Act provides in pertinent part: G.S. 48-3, who may be adopted; G.S. 48-4, who may adopt children; G.S. 48-15, The petition for adoption, *inter alia,* must state: (6) that it is the desire of the petitioners that the relationship of parent and child shall be established between them and said child; and (8) the desire of the petitioners that the said child shall, upon adoption, inherit real and personal property in accordance with the statutes of descent and distribution; G.S. 48-23, "Effect of final order. The final order forthwith shall establish the relationship of parent and child between the petitioners and the child, and, from the date of the signing of the final order of adoption, the child shall be entitled to inherit real and personal property from the adoptive parents in accordance with the statutes of descent and distribution"; G.S. 48-28 (b), "The final order of adoption shall have the force and effect of, and shall be entitled to, all the presumptions attached to a judgment rendered by a court of general jurisdiction"; G.S. 48-34, "Past

adoption proceedings validated. All proceedings for the adoption of minors in courts of this State are hereby validated and confirmed and the orders and judgments heretofore entered therein are declared to be binding upon all parties to said proceedings and their privies and all other persons, until such orders or judgments shall be vacated as provided by law; provided that this section shall not apply to litigation pending on the effective date of this Act in which the validity of a prior adoption proceeding is involved"; and G.S. 48-35, "Prior proceedings not affected. Adoption proceedings pending on date of ratification shall not be affected, except that the provisions of G.S. 48-34 shall apply thereto, and such proceedings shall be completed in accordance with provisions of the statutes in effect at the time such proceedings were instituted; provided that the petitioners in proceedings pending on date of ratification may discontinue such proceedings by taking voluntary nonsuits and, upon paying the costs accrued in such discontinued proceedings, may institute new proceedings under the provisions of this Act, in which cases all the provisions of this Act shall apply." And the Act provides that all laws and clauses of laws in conflict with this Act are repealed, and that the Act shall become effective upon ratification. It was ratified 11 March, 1949.

Thus, an inspection of the foregoing provisions of the various acts amending and rewriting the provisions of the adoption statutes, reveals plainly a legislative intent that each shall have prospective effect.

Statutes are presumed to operate prospectively only. *Hicks v. Kearney,* 189 N.C. 316, 127 S.E. 205; *Commrs. v. Blue,* 190 N.C. 638, 130 S.E. 743; *Sutton v. Davis,* 205 N.C. 464, 171 S.E. 738. Indeed, in these acts, respectively, the General Assembly has expressly declared respect for all prior proceedings.

Moreover, this Court, in *Grimes v. Grimes, supra,* a case similar in factual situation to that in hand, in respect of an adoption prior to 16 August, 1924, and speaking of the provisions of C.S. 185 and Chapter 207, P.L. 1933, had this to say: "Since the statute is in derogation of the common law and works a change in the canons of descent, it must be construed strictly and not so as to enlarge or confer any rights not clearly given. The statute gives no power to the adopted child to inherit through the adoptive parent, or from any source other than the 'estate of the petitioner.' The statute limits the right to inherit to the property of the adoptive parent, and it cannot be construed to give the adopted child the right to inherit from his father's ancestors or other kindred, or to be a representative of them. By the adoption the child is not made issue or heir general, nor is he made the kin of the kindred of the adoptive parent. The effect of the adoption is simply to create a personal status between the adoptive parent and the child adopted, so that the adopted child may

inherit from the adoptive parent such estate of the adoptive parent as such parent, during his lifetime, might voluntarily have given to such child."

And, continuing in the *Grimes case:* "The right to inherit property by reason of blood kinship is a natural one. The right to inherit property created by adoption is an artificial one. The status established by adoption proceedings is a contractual status, and while one may assume the status of a father to a stranger if he so desires, he cannot impose upon his kindred the status of kinship to such stranger. Adoption is 'a judicial act, creating between *two persons* certain relations, purely civil, of paternity and filiation.'. Black's Law Dictionary."

Again, "While the statute gives to the adopted child the right to inherit the real estate and to share in the personal estate of the adoptive parent, it leaves the adopted child in the same relationship to all others as he occupied before the adoption . . . When he asserts his right as an adopted child of his uncle, he does so, not by virtue of the blood, but solely by virtue of the statute."

The case *Phillips v. Phillips, supra,* treated the subject in respect to an adoption in the year 1924. The opinion of this Court followed the decision in *Grimes v. Grimes, supra.*

The foregoing review of statutes and decisions leads to the conclusion that the rights of plaintiff are controlled and governed by the provisions of the adoption statute in effect on the date of her adoption, and that under such statute her right to inherit real estate, and to take or share in personal property is limited to that of her adoptive parents, and no other, unless, perchance, the rules shown in the amendments of 1947 to the statutes of descent and distribution enlarge her rights.

In this connection it may be conceded that the General Assembly of North Carolina has power to make and change statutes relative to the descent and distribution of property within the State, and that ordinarily the disposition of the property of a person dying intestate is governed by the statutes in force at the time of his death. But such statutes are subject to the general rules of statutory construction. And when necessary the statute should be considered in connection with other statutes affecting the same subject matter. 26 C.J.S. 1003-5, Descent and Distribution, Sections 12, 13 and 18.

Hence, when the Acts of 1947 creating the new rules of descent and distribution relative to rights of an adopted child are read in connection with the statute pertaining to the adoption of minor children in effect at time plaintiff was adopted, it is seen that the right of plaintiff to inherit and take property is prescribed and limited by a court order which has the force and effect of a judgment of a court of competent jurisdiction.

Ordinarily the rule is that parties and their privies are bound by such judgment. *Meacham v. Larus & Brothers Co.,* 212 N.C. 646, 194 S.E. 99.

And it is noted, by way of repetition, that the General Assembly in all of the Acts, including Chapter 885 of 1947 Session Laws and the 1949 Act, relating to adoption proceeding, hereinabove reviewed, has declared all such orders and judgments to be binding upon all the parties to said proceedings and their privies and all other persons, until vacated as provided by law.

Indeed, in this State a statute will not be given retroactive effect when such construction would interfere with vested rights, or with judgments already entered. *Morrison v. McDonald,* 113 N.C. 327, 18 S.E. 704; *Commrs. v. Blue, supra; Hospital v. Guilford County,* 221 N.C. 308, 20 S.E. 2d 332.

In *Morrison v. McDonald, supra,* the principle is epitomized in this headnote: "The legislature has no right, directly or indirectly, to annul in whole or in part a judgment already rendered and to re-open and rehear judgments by which rights of the parties are finally adjudicated and vested." To the same effect are *Commrs. v. Blue, supra,* and *Hospital v. Guilford County, supra.*

Therefore, it is held in the case in hand that the said new rules of descent, G.S. 29-1 (14), and of distribution, G.S. 128-149 (10), are effective prospectively only, and are unavailing to a child adopted under the adoption statute, Chapter 2 of Revisal of 1905.

In the light of the above holding, there is error in the judgment, from which appeal is taken, in so far as it holds (1) that the 1947 amendments to the statutes of descent and distribution control the descent of real estate and the distribution of personal property of which Harry P. Hunter died seized and possessed, and (2) that in respect of the said real estate plaintiff is entitled to an interest therein, taking through her adoptive father, Malcolm B. Hunter, the share he would have inherited had he survived his brother, Harry P. Hunter, deceased. But there is no error in the holding that since plaintiff has no relation of kinship to the deceased she does not participate in the distribution of the personal property of his estate.

Hence, the cause will be remanded for further proceedings in accordance with this opinion.

On plaintiff's appeal—Affirmed.

On defendants' appeal—Error and remanded.